Good morning. May it please the court, counsel. My name is Milagro Cisneros and I represent the defendant appellant in this case, Dale Washington Orman. I would like to reserve two minutes for rebuttal. The issue here is simple and a police brief does not address it. Mr. Orman was searched and his firearm was seized without his consent and without cause to believe there was criminal activity afoot. At what point was Mr. Orman stopped? Your Honor, I believe that Mr. Orman was stopped at the very moment that Officer Farragamo motioned to him to move to the glass wall, if you recall. Your Honor, what he did was he said What findings do you have against you at this point, though, too, from the district court? I'm sorry, Your Honor. What did the district court find about that? Your Honor, the district court found that that particular moment, at that particular moment, the encounter was consensual. That's what the district court found. All right. And the district court made some findings believing the officers over your client, right? That's correct, Your Honor. All right. Are we constrained to some extent by some of those findings? Your Honor, we are constrained to some extent, but only to some extent. Okay. And the reason for that is because when Officer Farragamo approached Mr. Orman at the mall and asked to speak with him, that encounter quickly became nonconsensual. What the district court said was that the initial encounter, and I quote, was consensual and that the conversation in the mall was consensual. And herein lies the court's error. The court paints with a broad brush the entire events at the mall. He failed to break down that encounter into its component pieces, and the Fourth Amendment does require that. A consent to a conversation cannot also encompass consent to search and a seizure. And a search of Mr. Orman and a seizure of the firearm in the context of a finding of consent would have required clear and unequivocal knowing and intelligent consent. Well, I guess if, based on the findings that the district court made, which was that it was a seizure, if we have to give deference to those findings. Your Honor, you can conclude there was a seizure because the court clearly found, or the facts clearly are, that Mr. Orman was searched and that he was, that the firearm was seized. And what I argued, and the government does not respond to that argument, is that the district court did not make any findings about the seizure of Mr. Orman's person. That was tantamount to a seizure of Mr. Orman's person. That was not consensual at that point. That's your point. Yes, Your Honor. Absolutely. And, in fact, the district court does not make any findings about this. And here is the error. He can't just simply paint with a broad brush and say the initial encounter and the conversation were consensual, but other things happened. Well, what about safety? I'm sorry. On the officer safety issue, the court didn't address that below, but you never challenged officer safety as a basis for seizing the gun, right? No, Your Honor, I did. In fact, what I said in the reply brief. Where? No, I mean down below. Oh, Your Honor, it wasn't discussed simply because it was not an issue. And it's now being raised as an issue. What should have happened, Your Honor, is that Officer Ferragamo should have done what he did with other mall patrons, which was to simply tell Mr. Orman to take his gun out of the mall. He didn't do it here. He searched him and he seized the firearm without having probable cause to do so. In fact, without there being even reasonable suspicion to do so. And I cite to the case, and I apologize for not really knowing how to pronounce it, Ubilese or Ubilese from the Third Circuit, exactly, the Virgin Islands case, where in the carnival the court found that there was no reasonable suspicion to simply search somebody, simply because somebody else said that they had a gun. In fact, the issue that the court discusses and that the government discusses as well, having to do with the reliability of the informant, is completely irrelevant to that discussion. It's legal to carry a gun, unlike most other states. Yes, Your Honor. It's legal to carry a gun if you have a permit. And I take it your argument is, with others in the mall who didn't have tattoos and short-sleeved shirts, they were told to take their guns and put them away in the car. They didn't do that here. I understand your argument that all the police officer had to do was say, do you have a permit? And the police officer didn't do that. Therefore, it was an illegal seizure? Correct, Your Honor. And it's not just myself and Mr. Orman that are arguing this. The district court itself found that later on there was no probable cause because there was no criminal activity afoot. So how could there possibly be reasonable suspicion earlier when the basic fact is that there was no criminal activity afoot? Well, the reasonable suspicion is an objective standard, correct? Yes, Your Honor. Now, why wouldn't, all right, they had a tip that they put a gun in his boot and that he's then, he's wearing the wife-beater t-shirt and he's covered with tattoos. Why wouldn't that be objectively reasonable suspicion that he was a, not that he was a prohibited possessor? I mean, it's not objectively unreasonable that people that have tattoos all over their body might have done a little bit of time. No, Your Honor. However, what the district court found, and we are relying on that, and what Officer Faragamo himself said is that he had no concerns regarding Mr. Orman's appearance. And that is in the record. What do you say about a, a, a stop where, for officer safety purposes, the officer feels that it's necessary to relieve the person of a gun that he has? Again. What's wrong with that? Well, again, Your Honor, I think that the, that the issue is really a red herring. The issue of officer safety is a red herring here. What would be left of the Terry Stop cases if an officer is told that an identifiable person, identifiable by the short-sleeved T-shirt or whatever, was stuffing a gun in his boot before he went into the mall? What's wrong with the Terry Stop at that point? Your Honor, there's a, there's, well, the officer, because in Arizona it is not illegal to carry a concealed weapon, the officer would have had to investigate whether there was... Well, he would have asked him if he had a permit. And he didn't. And he did not. He did not ask him. Well, he doesn't have one because he's a convicted felon, right? I'm sorry, Your Honor? He doesn't have one because he's a convicted felon. Your Honor, I, I don't know, and I presume that that's the case. I don't know. But he didn't ask him. And, in fact, that is something that the, that the district court found later on was a problem. Was a problem. That is the reason why the district court found there was no probable cause in Arizona. It is legal to carry a weapon concealed. The officer did not know whether Mr. Orman, in fact, was violating the law, whether there was criminal activity afoot. It's simple. Do you want to reserve the balance of your time? Yes. Thank you. Good morning, ladies and gentlemen of the panel. My name is Michael Lee. I'm a special assistant United States attorney and I'm representing the government in this case. Good morning. Defense counsel is basically putting the cart before the horse. Defense counsel has claimed before this court that in order for the officers to do a Terry Frisk, there must be a reasonable suspicion of criminal activity. That's not what Terry holds. Terry holds that when the officers are in a lawful place where they have made a lawful contact or they've made a consent, there's a consent situation, or even when there's reasonable suspicion of criminal activity, that if they have a separate fear of their safety or the safety of others, then they're allowed to do a Terry Pat and Frisk at that time. And the record indicates they had a fear. I'm sorry? What in the record indicates that they had a special fear about Mr. Orman?  Lawful in Arizona. Lawful if one has a permit. That's correct. And the officer did not know whether or not he had a permit. Is that correct? The officer did not know that at the time. And they did not ask. He did not ask when he made the initial contact. Reached over and pulled his gun out of his waist. At that point, was Mr. Orman free to leave? The case law the defendant cites indicating that the police seize a particular item of property and that a person has been effectively seized because of that does not address an officer safety issue. In this particular instance, the officers, when they make contact with a person who has a concealed weapon in this public mall, a mall that by itself has signage and was already testified to, does not allow those types of weapons in the mall. That's irrelevant to whether or not the arrest is legal, is it not? The mall, the fact the mall doesn't want guns, I can understand, but that's not a statute prohibiting the carrying of guns in the mall. Correct. The issue you requested me to address is what specific fear or concern they had regarding Mr. Orman. Again, he's carrying a concealed weapon in the mall. The officers themselves, as they make contact with him under these circumstances, has made a consensual contact with him  so that the officer can continue that consensual contact and do it in a safe manner, he retrieves the weapon. The reality is that what defense counsel is asking the court to do is that when an officer pulls someone over for whatever reason, talks to them either in a consensual manner or even a civil traffic stop, and the individual has a weapon on their person, that somehow the officer is supposed to go through a diatribe of questions as to whether you have a concealed weapons permit or are you a convicted felon before they can take the weapon and then from there diffuse the situation and then make a determination whether this person can lawfully possess this. Well, if you were in California, your argument would carry a great weight. What's different is that Arizona says citizens can carry these guns around if they have a permit. That's correct. The district court, being fair, stated that the officer, for the officer to arrest him at that later point in time in the security office without asking him regarding whether he had a concealed carry permit, without asking him whether he was a convicted felon, that was not probable cause that he had violated any statute. But it certainly was reasonable suspicion as he's carrying a concealed weapon in this juncture. I mean, note what Mr. Orman did. When asked specifically, are you carrying a weapon, he goes, oh, yes, I'm sorry, I am. His I'm sorry statement, is this a citizen saying, I'm sorry, officer, you had to be bothered by the fact that I have a concealed weapons permit and someone has made this complaint against me in some manner or fashion, so I'm sorry I've taken up your time, or is it, I'm sorry, I've been caught, I don't have a concealed weapons permit, I'm a convicted felon? We don't know. But it leads to the officer's reasonable suspicion at that point in time or reasonable concern that this person is now carrying when he is not allowed to or shouldn't be. But what happens, how do you differentiate this from the case when officers found other people in the mall carrying guns, they say, will you please take your gun and put it in your car? They did not do it with this, with Mr. Orman. Well, we have one statement from Officer Ferragamo indicating at some point in time in the past that when he had been in contact with someone under circumstances unknown that he had allowed that person to return their firearm back to their vehicle. We have no context for this. Was this person carrying it on their hip? Arizona has an open carry law that if a person is carrying a firearm openly and not concealed that they can do as such as long as there's not an age limitation for the particular person as well as if they're a prohibited possessor. But we have no context for that. And besides the fact if the Officer Ferragamo had asked someone to do that in the past that doesn't change what his personal subjective decision to make at that point in time. That doesn't change how he should act necessarily at this point in time. We don't know those circumstances. Is there anything, like the covered with tattoos, if the standard is objective, does that factor in at all? That, you know, he's wearing the white beater t-shirt and shirt and he's covered with tattoos, is that a factor at all? I believe that the Officer himself, he testified that you're asking for an objective basis. Well, because isn't that the ultimate standard? Not the subjective. You have to ultimately decide it on an objective standard, right? Correct. And given the fact that we have this individual supposedly concealing a handgun in their boot, he's covered with tattoos, he's wearing the particular t-shirt, again, these things, and he's concealed a deadly weapon on his person, these things can give rise during this particular contact to the Officer being concerned for his safety and the safety of the patrons in the mall. I mean, the reality is that you have this contact being made in that public walkway at 345 in the afternoon right next to the Victoria's Secret window. I am not a patron of that particular establishment, but my understanding is that that is predominantly a number of women in there. It is a situation where he... You've heard that. I've heard that. That he could be here... What about that case that we all are avoiding pronouncing, the Virgin Island case, the Ohara-Hagee case or whatever, the Third Circuit case? What's your best argument distinguishing this case from that case? In the fact pattern that was stated in that particular case, they received an anonymous tip from an individual that another individual happened to have a weapon on their person. The officers in that case go over and discuss with this... Go over and start talking with them and then we don't know what that discussion entailed, but we next know that they simply frisked him at that point in time and found weapons. The officers there did not make a determination that even could allow for them to have a reasonable apprehension or fear for their particular safety because they just simply had no evidence that this person was carrying a weapon other than the anonymous tip. In this particular situation, we have the not purely anonymous tip by the APS worker that occurred at Paradise Valley Mall that day and further, when you have the consensual contact, the defendant admits, yes, I have a weapon and here it is as he points to it concealed on his person. The officers had a reasonable apprehension... A reasonable, prudent officer at that time in an objective situation would seize that weapon for officer safety purposes. So you're saying while they're investigating, the officer doesn't have to have an even playing field so that they can both decide who draws fastest. You can remove that from the equation and then go forward and investigate. But what about the... How does the... It's pretty... Obviously, I think in Arizona it's easier to get a concealed weapons permit than, say, the Virgin Islands because I think there was some testimony that apparently or there's some indication that it's more difficult there in the Virgin Islands to have a concealed. What... How does... Do you have to ask, do you have a permit? How does that... Or is that something that someone has to volunteer or how does that come into... Does it matter? Well, to be in violation of the statute of being a person who's carrying concealed and to have the felony charge arise carrying concealed or being a person carrying a deadly weapon in a concealed fashion, the only way you can carry that is if you have a permit. The law requires that if an officer requests for an individual to produce their permit that they have to do as such. In fact, it's a separate crime if they do not produce it. Okay, but if you don't request, does that negate probable cause? It may negate probable cause and that's what the district court found at this juncture, but it certainly doesn't negate reasonable suspicion and moreover, the reasonable apprehension that this officer may have for his safety and others allowed him, as he's trying to determine what is occurring in the situation, allowed him to seize that weapon. You know, the problem I have with that is that Mr. Auburn was cooperative all the way along. He admitted that he had the weapon. He said, here it is. I found nothing in the record where the officer said, you know, may hand it over. Would you mind if I took it over? He just reached over and seized it and the apprehension of the officer for his safety, this is the difficult part I'm having here, if he had been uncooperative in any way, shape, or form, there might be a reason to seize it, but he moved over, he was polite, he said, yes, I have the gun, and then all of a sudden the officer pulls the gun without even saying, do you mind? If he said anything here, he just seized it. Would it's lawful to have it? It's lawful if one has a permit to have it. The officer does not know what that juncture regards. Therefore, how does he have reasonable suspicion? A reasonable concern for his safety is the fact that an individual is carrying a deadly weapon on their person. This man might impair his safety is what he's going to have to have. Correct. Well, he has to make that well, first of all, the reality is that for him to sit and ask, Mr. Orman, by the way, Mr. Orman, you admitted to me you have a weapon, you admitted to me you have a conceal on your person, by the way, do you have a permit to carry that, this extended conversation that he is supposed to have to make this determination, this could put the officer in danger. Because at this juncture, if Mr. Orman is less than an upstanding citizen, by the time he's asking, sir, do you have a permit, Mr. Orman could be reaching under his shirt and pulling that gun out. As has been demonstrated. Now, as has been indicated by Judge Callahan, we don't have to sit here and figure out who's fastest on the draw. What the officer has to do is when he is in reasonable apprehension for his safety and for the safety of others, he can diffuse the situation, take the weapon, as any reasonable, prudent officer would do, even in a civil traffic stop. They would do that if they had that dangerous weapon near that individual, and then they can make a determination if there has been some criminal or civil violation that's occurred. Well, then, since Arizona makes it legal to have concealed weapons, the officers would always be in reasonable apprehension of anybody, whether they had tattoos or a short-sleeved T-shirt on. I mean, you're saying if they think there's a weapon there, there's reasonable apprehension. I would agree with you.  can carry a gun. The statute says that a person can carry a gun if they get a concealed carry permit, which requires classes, a background check, and actual shooting training. But the officer doesn't know whether all those people in the mall who have guns have permits. So all those people are subject to a carry permit. The officer did not just approach people in the mall randomly. The officer had specific credible information regarding an individual who, from a person who is not a completely anonymous tipster, that this person was carrying a firearm. He confirmed that information through Mr. Orman, and that's when he sees the firearm. Are you saying that what I'm hearing you say is that the right to carry with a permit is distinct from the right to have it on you at all times if the police are investigating you, you know, are questioning you, investigating you. That doesn't mean you may that will prevent you from being charged with a crime, but if the police approach you about something else, just because there's a statute that allows you to carry, that doesn't mean that the police have to put, have to lessen their comfort level or put themselves in danger while they're investigating something else, right? That is correct. And that's what Terry holds. That is the basis for a, for officer safety purposes, that an officer can obtain that weapon for the particular time period while the investigation, or as in this case, a consensual contact was occurring. So Terry doesn't really, it doesn't make a difference with Terry whether you're in a state where you can carry a gun or you're not. That's correct. Alright, I understand your argument then. Any further questions? Yes. Alright, thank you for your argument. Thank you. Why don't you tell us, why should an officer have to worry about his or her safety while they're approaching someone about Your Honor, Judge Nelson hit the nail on the head. The government cannot have it both ways. They cannot at the same time argue that everything is cordial and then argue this officer's safety rationale. I think, honestly, this is just a red herring here in this case. Well, everything can, that doesn't mean the person was pointing a gun at you, but by the same token, do you want to question, do you want to further investigate a crime with, you know, allowing someone to have, you know, that opportunity? Your Honor, it's perfectly legal to carry a gun concealed in Arizona. As you said, if somebody was accused of Okay, but how does that, but the question is, is Terry different in a state where you can legally carry a gun and in a state where you can't? Your Honor, reasonable suspicion for a Terry stop requires that there be criminal activity afoot. That is something that is required. It's not simply being afraid or concerned. Reasonable suspicion that criminal activity is afoot. There was no criminal activity afoot here that the officer knew about. In fact, the district court finds that even later on, much later, once they've already walked through the mall, when the gun has already been seized and Mr. Orman has no idea when he's going to get his gun back, there is no criminal activity afoot. There was none here. That is required. Well, that's not entirely true because your client, there was criminal activity afoot because your client was carrying a gun and he was a convicted felon. Now, but what the officers knew when they approached them, that's a different, but to say that there was no criminal activity afoot, I've got to I mean, there was a crime right there. Whether they knew it or not. But the officer, but what is required is that the officer know that there is criminal activity afoot. And all the cases that have reasonable suspicion, correct, but that there is criminal activity afoot. That is the issue. And Terry Hey, there was criminal activity afoot. Do we agree on that? I mean, we have a convicted felon with a gun in the mall. We agree about it, but not that the officer knew. And that is the key. And Terry, in all the cases that are cited, and Terry, in all the cases that are cited, the officers suspected that there was criminal activity afoot. Here, it's perfectly legal for somebody to carry a gun concealed. The officer did not know whether Mr. He was a concealed weapons permit carrier. And in fact, the government refers to a diatribe. One simple question, Your Honor. Do you have a permit to carry that? One simple question. That was all that he needed to do, and he didn't do it. Okay, thank you. If there are no further questions, your time is up. Thank you both for your argument in this matter. This matter will now stand submitted. Court will be in recess until tomorrow morning at 9 o'clock. Thank you. Thank you.
judges: Goodwin, D.W. Nelson, Callahan